**Chapter 30 – Dropout Prevention**

Rule 30.8 – Educational Stability for Students in Foster Care

The Mississippi Department of Education (MDE) State Board of Education recognizes the importance of educational stability for students in foster care to promote high level achievement similar to peers.  Therefore, the MDE will collaborate, as appropriate, with Mississippi's Child Welfare agency, the State agency responsible for administering the State plans under parts B and E of Title IV of the Social Security Act (42 U.S.C. §§ 621 *et seq.* and 670 *et seq.*, the Mississippi Department of Child Protection Services (MDCPS), to ensure school stability and success for youth in foster care.

## I. Written District Policy

A. Each Local Education Agency (LEA) shall develop a local, written, district policy to address educational services for students in foster care in accordance with Federal and State laws and regulations.

B. The policy shall, at a minimum, include provisions regarding:

1. The process for deciding the Best Interest Determination (BID);
2. The development of written procedures governing how transportation for children in foster care will be provided, arranged and funded for the duration of time; and,
3. Awarding credit for full or partial coursework satisfactorily completed while attending prior schools, and consideration of credits partially completed in a prior school, awarding partial credits, and offering credit recovery courses.

## II. Foster Care Points of Contact

Foster Care Points of Contact (POC) shall be designated at both the MDE (State POC) and in local school districts (LEA POC) to carry out various responsibilities that ensure the educational stability and rights of students in foster care.

### A.  Mississippi Department of Education Foster Care State Point of Contact

The MDE shall establish or designate an employee in the MDE as State POC. The MDE State POC shall:

1. Collaborate with the Mississippi Department of Child Protection Services (MDCPS) to agency to develop and disseminate uniform guidelines for implementing the Title I educational stability provisions;
2. Ensure the MDE State POC designee's contact information is made publicly available on MDE's website and in relevant publications;
3. NOT be the State's Coordinator for Education of Homeless Children and Youths required under the McKinney-Vento Homeless Assistance Act (42 U.S.C. § 11432(d)(3));

2

4. Oversee implementation of the MDE's responsibilities required under 20 U.S.C. §6311(g)(1)(E) (educational stability, school of origin, Best Interest Determination (BID), records, and enrollment); and, ensure:

    a. a list of LEAs POCs is maintained and updated at least annually;

    b. each LEA submits its local POC designee to the State POC; and,

as outlined in 20 U.S.C. §6312(c)(5)(A), if the corresponding child welfare agency (MDCPS) notifies an LEA, in writing, that the MDCS has designated an employee to serve as POC for the LEA, and the LEA has not designated an LEA POC, the MDE State POC shall designate an LEA POC,  the MDE State POC shall designate an LEA POC.

**B. Local Education Agency Foster Care Point of Contact**

1. Each LEA shall designate a staff person to act as the LEA's POC for students in foster care. The LEA POC shall, at a minimum:

    a. Coordinate implementation of the Title I, Part A provisions, as it relates to the Foster Care provisions outlined in the ESSA and State laws and regulations;

    b. Document the BID decision;

    c. Initiate a school-to-school transfer of records with the school of origin for immediate enrollment (as defined in subsection [(III)(C)(II)(b)], and ensure the student is attending school while the records are being transferred;

    d. Document data sharing with the MDCPS consistent with Federal and State laws and other privacy protocols;

    e. Ensure children in foster care are enrolled in school as outlined in the State's compulsory attendance laws and regulations;

    f. Compile school and service-related documents (to include a student's Special Education records, if applicable), and ensure no delay or interruption in services (services begin on the first day of enrollment); and,

    g. Initiate collaboration with MDCPS POC and contact the designated MDCPS POC with concerns, such as, but not limited to:

        i. Resolving issues relating to services for students with special needs;

        ii. Clarifying which children are currently in foster care;

        iii. Obtaining records;

        iv. Maintaining current documentation and contact information for the child's Social Worker, foster parent of care provider, and person designated to make education decisions by confirming the status of the

education rights of the birth parent and, if applicable, seeking information on who holds educational decision rights; and,

    v.   Ensuring the individual designated to make educational decisions can access student records.

2. The LEA shall ensure that the name and contact information for the LEA POC is provided to the MDE at the beginning of each academic school year and placed on the District's website, and otherwise publicly posted, so the designee may be easily reached when required.

3. LEAs shall provide, any changes during the year, to the MDE State POC.

## III. School District and School

### A. Definitions

1. *Best Interest Determination (BID)* refers the collaborative process between MDCPS and local school districts based on the individual student's unique best interests. The determination involves input from multiple parties to make decisions about whether a student placed in foster care should continue to attend his or her school of origin.

2. *School of Origin* refers to the school that a student was attending at the time of placement in foster care or the last school the student attended, despite a change in home. To ensure continuity in education, remaining in the school of origin is preferred.

3. *School District of Origin* refers to the Mississippi school district in which a school of origin is physically located.

4. *Single-school Districts/Education Authorities* refer to situations in which an individual school operates as an individual school district (for example, charter schools). The school is considered both the school of origin and the district of origin.

### B. Designation of School District and School

The LEA, in consultation with the MDCPS, shall determine whether placement in the school district of origin or the school district of foster care placement residence is in the best interest of a student in foster care (*see*, subsection IV. Best Interest Determination) to ensure educational continuity for the student.

### C. LEA Responsibilities Upon School Designation

1. When the LEA, in consultation with the MDCPS, has determined in the BID that it is in a student's best interest to remain in the school of origin, the LEA shall document in

writing the individualized student's plan regarding how transportation shall be provided, arranged, and funded for the student.

    a.  The LEA shall document in writing the Transportation Plan, developed in collaboration with the MDCPS, that supports the District's obligations under federal and state law to ensure any student in foster care who requires transportation in order to attend his or her school of origin shall receive transportation services on the first day of the student's attendance.

    b.  The Transportation Plan shall outline:

        i.  How transportation will be provided, arranged, and funded, as well as the costs for transportation, which shall be provided and allocated pursuant to applicable laws and regulations.

        ii.  The cost-effective manner as defined in 42 U.S.C. § 675(4)(A) to ensure each student in foster care receives transportation promptly to attend their school of origin.

        iii.  If applicable, the amount of "additional costs." Additional transportation costs incurred in providing transportation to maintain children in foster care in their school of origin reflect the difference between what an LEA would spend to transport a student to his or her assigned school and the cost of transporting a child in foster care to his or her school of origin. If additional transportation costs are identified, the LEA shall enter into a written agreement with the MDCPS describing to how excess transportation costs will be funded, consistent with applicable Federal and State laws and regulations.

        iv.  An LEA should also consider whether transportation can be provided for minimal or no additional costs.

        v.  If there are additional costs incurred in providing transportation to maintain children in foster care in their schools of origin, the LEA will provide transportation to the school of origin if—

            (I) the local child welfare agency agrees to reimburse the local educational agency for the cost of such transportation;(II) the local educational agency agrees to pay for the cost of such transportation;

                        or

            (III) the local educational agency and the local child welfare agency agree to share the cost of such transportation.

    c. In the event a dispute arises between the LEA and MDCPS concerning the cost of transportation to ensure the child in foster care remains in his or her school of origin, the LEA shall forward the dispute to the MDE State POC in accordance with the Dispute Resolution Process (see subsection V).

    d. Title 1, Part A may be utilized to provide transportation for foster youth; however, Title 1, Part A funds set aside to serve homeless children **cannot** be used for children in foster care [42 U.S.C. § 675(1)(G); 20 U.S.C. § 6311(g)(1)(E)(i); 20 U.S.C. § 6312(c)(5)(B)].

2. When the LEA, in consultation with the MDCPS, has determined in the BID it is in a student's best interest to leave the school of origin, the enrolling LEA shall:

    a. ensure enrollment in the new school takes place on the same day the MDCPS representative (i.e. case worker, educational liaison) enrolls the student, even if the child is unable to provide records normally required for enrollment, to prevent disruption of the student's education.

        i. A student in foster care must be enrolled by a MDCPS representative (i.e., case worker, educational liaison or an individual with MDCPS foster parent verification).

        ii. The LEA shall confirm, in writing, the person responsible for making educational decisions. If a student is removed, from the school, by anyone other than a MDCPS employee (social worker, educational liaison or an individual with MDCPS foster parent verification), the LEA will notify MDE immediately, unless a court order states otherwise.

        iii. Contact the school last attended (school of origin), within one (1) school day of enrollment, to obtain relevant academic and other records.

    b. update the student database and contact information for the student within one (1) school day of notification of enrollment from the custodial agency (MDCPS).

    c. ensure the student is assigned to a school in the district in the same manner and according to the same process used for all other students in the district.

    d. follow its local, written policy concerning transfer of coursework.

    e. ensure each student in foster care shall be provided services comparable to other students in the school of attendance, including but not limited to: transportation services; educational services for which the student meets eligibility criteria;

educational programs for students with disabilities; educational programs for English learners; programs in career and technical education; programs for gifted students; and school nutrition programs.

    f.   ensure that it is documented, on the BID, that a student was withdrawn prior to the BID, if applicable.

3. Student's Records

    a.   Upon receipt of a written request for school records from a new school, the school district of origin shall forward, in a manner consistent with Federal and State law and in compliance with all privacy and confidentiality laws, a complete copy of the records of the student in foster care. Information needed by the receiving school district shall include, but is not limited to:

        i.   Proof of age;
       ii.   Immunization records;
     iii.   Cumulative education file, if the child is attending a public school.
     iv.   Copy of the current IEP, if the child is eligible for special education services;
      v.   Copy of the current Section 504 Plan, if the child has a Section 504;
     vi.   Copy of health records kept by the school; and,
    vii.   Any other pertinent information needed to assist the enrolling school in providing appropriate educational services.

    b.   The inability to receive records shall not delay student enrollment.

## IV. Best Interest Determination

The Best Interest Determination (BID) is the collaborative process between MDCPS and local school districts based on the individual student's unique best interests.

A. The LEA shall coordinate with MDCPS, educational liaison or social worker, to finalize a BID within seven (7) school days **from the date the LEA is notified, by MDCPS,** of child's placement in foster care or change in the child's living arrangement, except in emergency removal situations. During the BID determination period, the LEA shall ensure the child is permitted to remain in his or her school of origin and the LEA shall document how transportation shall be provided, arranged, and funded during the pendency of the BID decision.

B. BID Participants

The LEA shall ensure the BID decision shall involve input from multiple, relevant parties who have the authority to make decisions regarding the child in foster care, and who have the knowledge and expertise about the child and the child's circumstances to determine

whether a student in foster care should continue to attend his or her school of origin.. These parties may include:

1. MDCPS representative;
2. Student, if applicable;
3. Child's foster family;
4. Individual from receiving school district;
5. Counselor;
6. Guardian Ad Litem; and,
7. Biological Parent, if determined by MDCPS or Court Order.

If there is disagreement regarding school placement for a student in foster care, MDCPS is the final decision maker.  Under ESSA, to promote educational stability, students should continue to attend their schools of origin while BIDs are determined.

C.  Factors for BID Decision

The LEA shall consider all factors relating to a child's best interest.  Although there is flexibility in determining which factors should be considered as part of evaluating the appropriateness of the current educational setting, the LEA shall, at minimum:

1. Appropriateness of the current educational setting (the school of origin),

2. Proximity to the school in which the child is enrolled (the school of origin) at the time of placement in foster care,

3. Preferences of the child's parent(s) or education decision maker(s) (individual legally authorized by the court to make educational decisions for a child in foster care);

4. Holistic and well-informed determination, utilizing a variety of student-centered factors including, but not limited to –

   a. Student's age and grade level;
   b. Student's preference, when age appropriate;
   c. Student's attachment to the school, including meaningful relationships with staff and peers;
   d. Placement of the student's sibling(s);
   e. Distance/length of time to travel to/from school;
   f. Time of academic year, academic performance, and skills;
   g. Current educational goals and services; anticipated length of time in placement, and whether reunification is the family goal;
   h. Number of placements to date;
   i. Child's participation in specialized instruction (e.g., gifted programming, career technical education program, College Credit Plus, Advanced Placement classes);

8

    j.   Availability of required special education and/or related services in a school other than the school of origin when the student has an identified disability under IDEA or Section 504;

    k.   Availability of language services in a school other than the school of origin when the student has been identified as an English learner;

    l.   Child's ability to earn full academic credit, the ability to proceed to the next grade, or the ability to graduate on time;

    m.  School climate, peer support, supportive adults, and involvement in extracurricular activities;

    n.   Availability and quality of the services in the school to meet the child's educational and socioemotional needs;

    o.   Impact the commute to and from school would have on the child, based on developmental functioning. For children with disabilities, consider the IDEA's federal requirements when determining best interest;

5. Whether the student needs to remain in the school of origin for a limited time (e.g., until the end of the school year, the end of a testing or grading period).

6. Determine if it is appropriate to revisit the question of whether it is in the student's best to remain in the school of origin or enroll locally, and if so, document a specific time to reassess; and,

7. NOT consider the cost of transportation when determining a child's best interest.

## V. Dispute Resolution Process

A.   The LEA shall permit a student in foster care to remain in his or her school of origin while any dispute is pending in order to minimize educational disruptions and reduce the number of moves between schools.

B.   Once all avenues to resolve a foster care dispute at the local level have been exhausted, the LEA may forward the dispute to the MDE.

C.   In the event of a dispute, the dispute resolution request shall include:

1. A complete explanation of the basis of the dispute, with all pertinent facts.

2. The name and contact information of the individuals who have been addressing the dispute thus far on behalf of both the LEA and the MDCPS (phone, email, and mailing address).

3. Details of previous attempts to resolve the dispute at the local level prior to requesting assistance from the State POC.

Source(s):  20 U.S.C. §§ 6311(g)(1)(E); 6312(c)(5); (h)(2)(C)(ii). U.S. Departments of Education and Health and Human Services (2016) (Adopted 5/2020)