IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MELANIE YOUNG and ASHLEY FALGOUT**                                    **PLAINTIFFS**

**v.**                                              **CIVIL ACTION NO. 3:24-cv-00615-CWR-ASH**

**MISSISSIPPI DEPARTMENT OF**
**CHILD PROTECTION SERVICES**                                              **DEFENDANT**

**REPLY BRIEF FOR MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant, Mississippi Department of Child Protection Services ("MDCPS" or "Defendant"), though counsel and pursuant to FED. R. CIV. P. 56, and hereby submits its Reply Brief in support of its Motion for Summary Judgment [30], as follows:

**1. NEW FRAUD CLAIM IN SUMMARY JUDGMENT RESPONSE AND AFFIDAVITS.**

Plaintiffs' *First Amended Complaint* pleads a "false claim" under the FCA for "federal grants … which require Defendant to comply with the IDEA[,]" and identifies non-compliance with IDEA statutes/regulations over IEPs, namely MDCPS officials signing IEPs as "parents" for youth in foster care instead of a surrogate parent.  [1-1, pp. 271-285], ¶¶ 15-18, 22-26, 30, 35.  Plaintiffs' Interrogatory Responses echoed the same false claim:

> INTERROGATORY NO. 21: Please identify, in specific detail, any fraud that you contend was committed against the United States or any false claims that you contend were actually submitted to the United States.
> ANSWER NO. 21: … Plaintiffs complained that Defendant was not complying with federal grants that required the state to have a surrogate parent present for IEP meetings. Defendant has fraudulently represented to the U.S. government that it is in compliance with rules and regulations regarding IEP meetings for children that are wards of the state. Defendant has continued this fraud even after Plaintiffs pointed the issue out to Defendant so it could continually to fraudulently receive federal funds.

[30-3], pp. 13, 114.  Young testified that the reported legal violation concerned IDEA regulations regarding IEPs: "[t]hat the agency and its designees are not allowed to serve as special education parent."  [30-2], 70:16-71:4.  Falgout also testified the Federal IDEA law

regarding IEPs was implicated which ""says [an] IDEA [parent] cannot be anybody that works for the … State …[,]" but MDCPS agents were signing as the "parent" on IEP forms. [30-1], pp. 87, 173-174. The reported IDEA noncompliance over IEPs was "the agency and its designees are not allowed to serve as special education parent." [30-2], 70:16-71:4.

A viable FCA retaliation claim must have "protected activity", which requires internal complaints of: **(A)** violation of statute/regulation; that **(B)** forms the basis of a false certification of compliance as a condition for payment submitted to the government. According to Plaintiffs' *First Amended Complaint*, as well as their discovery responses and deposition testimony, the FCA "false claim" includes **(A)** IDEA noncompliance with its IEP regulations over "parent" signatures; and **(B)** false certification of compliance with these IEP regulations to receive funds under the IDEA.

Now, Plaintiffs admit that part **(B)** fails under the IDEA because MDCPS admittedly does not receive IDEA grant funding. Thus, they could not engage in "protected activity" in furtherance of a "false claim" for IDEA funds. Faced with this reality, Plaintiffs *pivot* to an entirely different federal grant program— the *Chafee grant*— which unlike the IDEA does provide grant funding under a *different* set of terms and regulations.

Without amending their *First Amended Complaint*, Plaintiffs' Response Brief [38] and their Affidavits [37-1 – 37-2] allege an entirely new fraud claim for Chafee funds to manufacture new "protected activity" under the FCA. Significantly, both Plaintiffs Affidavits are submitted to avoid summary judgment largely mirror the same allegations from the *First Amended Complaint* but with material changes. *See generally* FIRST AM. COMPL. [1-1, pp. 271-285], ¶¶ 6-89; *cf.* FALGOUT AFF. [37-1], ¶¶ 2-94, YOUNG AFF. [37-2], ¶¶ 2-88. Each Affidavit abandons the original IDEA "false claim" and inserts new allegations intentionally designed to buttress their new Chafee "false claim". The applicable federal grant from the original

2

Complaint is changed from "federal grants … which require Defendant to comply with the IDEA." (FIRST AM. COMPL. ¶ 16) – to – "federal grants … which require Defendant to comply with the IDEA, on of which being the Chafee Grant." (FALGOUT AFF. ¶ 12; YOUNG AFF. ¶ 9). A new allegation also identifies "regulations that prohibit the agency from serving in the role of a parent when concerning IEPs" and concluding that IEPs are "legally binding documents". FALGOUT AFF. ¶¶ 11, 13; YOUNG AFF. ¶ 8, 10. Plaintiffs assert new responsibility for MDCPS compliance and oversight with the Chafee grant and the National Youth in Transition Database ("NYTD") data reporting. *Compare* FALGOUT AFF. ¶¶ 3, 6, 8, *and* YOUNG AFF. ¶¶ 3, 16; *with* FIRST AM. COMPL. ¶¶ 7, 10, 12.

Plaintiffs additionally allege new internal complaints to create new "protected activity" under the FCA. The June 2021 meeting between Plaintiffs and Davenport is alleged "to discuss education concerns" in the *First Amended Complaint* (FIRST AM. COMPL. ¶ 16); but is now recently changed "to discuss education concerns, including false IEP submissions under AFCARS and also the NYTD." (FALGOUT AFF. ¶ 26; YOUNG AFF. ¶ 23.) Likewise, the Complaint's allegation of "The following issues with not following the federal block grants was presented to Mr. Davenport:" had now become "The following concerns about not following Title IV-E and the Chafee Grant requirements were presented to Mr. Davenport:". *Compare* FIRST AM. COMPL. ¶ 33; *with* FALGOUT AFF. ¶ 31 *and* YOUNG AFF. ¶ 28. The bullet-point list of issues/concerns thereunder went from zero (0) references to seven (7) references to the Chafee Grant and the NYTD. *Id.* MDCPS had previously been alleged to have violated "federal grants" but now is alleged to have violated "federal grant agreements". *Compare* FIRST AM. COMPL. ¶ 35; *with* FALGOUT AFF. ¶ 33 *and* YOUNG AFF. ¶ 29.

Not one violation of the Chafee grant or any impact on Chafee funding was mentioned or plead in the *First Amended Complaint*. Further, the data reporting requirements with NYTD or AFCARS are nowhere to be found in the *First Amended Complaint*.

To further amplify their misleading efforts, Plaintiffs rely on an ineffective data reporting program that is wholly **inapplicable** to this lawsuit. On multiple occasions, Plaintiffs' Response brief and Affidavits improperly cite to the Adoption and Foster Care Analysis and Reporting System ("AFCARS"), 45 CFR §§ 1355.41; *et seq*. However, the AFCARS reporting relied on, regarding the "special education" out-of-home care data element, 45 CFR 1355.44(b)(14)(37), did **not** go into effect until **October 1, 2022** (for fiscal year 2023). 85 FR 28410, at 28410-28411, 28423; *see also* Exhibit "1" (excerpts from AFCARS 2020 Tech. Bulletin 20), at pp. 1, 33, 146. Plaintiffs' erroneous reliance on AFCARS, which further diminishes their personal knowledge and basis for their allegations, must be disallowed.

Plaintiffs should not be allowed to allege one "false claim" (under the IDEA) during the pendency of this action, and then at the eleventh hour add a new FCA fraud claim (under the Chafee grant and NYTD) to defeat summary judgment. "Fraud giving rise to FCA liability must be stated 'with particularity,' meaning the 'who, what, when, where, and how of the alleged fraud.'" *United States of Am. ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, No. 25-20093, 2025 WL 3063921, at *2 (5th Cir. Nov. 3, 2025). "Claims and supporting factual allegations must be raised in the complaint and may not be presented only in a response to … a motion for summary judgment." *Ewing v. Richie*, No. 1:16-cv-90-HSO-JCG, 2017 WL 724343, at *2 (S.D. Miss. Jan. 9, 2017) (citations omitted).

> "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'" At the summary judgment stage, plaintiffs who wish to assert a new claim must amend their complaint in accordance with Federal Rule of Civil Procedure 15(a). As such, [plaintiff] cannot amend her Complaint by adding new claims in her summary judgment briefs.

*Pitts v. City of Madison, Mississippi*, No. 3:15-cv-892-CWR-LRA, 2017 WL 6003645, at *9 (S.D. Miss. Dec. 4, 2017) (internal citations omitted).

Moreover, "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them." *White v. ARCO/Polymers*, 720 F.2d 1391, 1396 (5th Cir.1983) (citations and footnote omitted). "Facts that are admitted in the pleadings are no longer at issue." *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) (quotations and citation omitted). "An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the court, nor can it be overcome on summary judgment by contradictory affidavit or other evidence in the summary judgment record." *Wilson v. Stachura*, No. 1:10-cv-66-RHW, 2012 WL 4602756, at *4 (S.D. Miss. Oct. 1, 2012) (citations omitted). Plaintiffs should be precluded from relying on its new and unalleged Chafee grant theory.

## 2. FCA RETALIATION CLAIM FAILS AS A MATTER OF LAW.

Notwithstanding, Plaintiffs' new Chafee grant theory fails as a matter of law because the Chafee statutes and regulations do not mandate compliance with IDEA/IEP regulations at issue as a prerequisite to the payment of money. Plaintiffs' new Chafee grant theory posits that IEP statutory obligations, codified elsewhere under the IDEA, also exists where it does not, under the Chafee grant. It also assumes that a single reported NYTD data element is the equivalent of certifying compliance with IDEA regulations over IEP "parent" signatures. However, Plaintiffs theory rests on legal fallacy and conclusory speculation.

### A. CHAFEE GRANT THEORY LEGALLY FAILS TO MANUFACTURE A FALSE CLAIM.

"The linchpin of an FCA claim resting on a violation of a statute or regulation … is the requirement of a certification of compliance." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014). "We have … concluded that when 'the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute

5

or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation.'" *U.S. ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 389 (5th Cir. 2008) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997)). A certification only is only protected activity under the FCA "when certification is a prerequisite to obtaining a government benefit." *Id.* The "prerequisite requirement" is what separates a protected false claim under the FCA from mere regulatory violations. *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 268 (5th Cir. 2010). Accordingly, Plaintiffs can only engage in "protected activity" and salvage a FCA retaliation claim if the regulatory violation complained of— i.e., the IDEA regulations over IEPs and its definition of a "parent"— is an actual prerequisite or condition for payment by the Chafee grant. "[W]hether payment is conditioned on compliance will depend on the specific statutes, regulations, and contracts at issue in a particular case." *Steury*, 625 F.3d at 269 n. 4. As such, for Plaintiffs to legally salvage a "false claim", the specific statutes and regulations propounded under the Chafee grant— 42 U.S.C. § 677— must provide authority that conditions payment on compliance with IDEA regulations over IEPs and "parent" signature.

The John H. Chafee Foster Care Program for Successful Transition to Adulthood ("Chafee") is established under Title IV-E of the Social Security Act. Its primary purpose is to provide states with flexible funding to help current and former foster youth transition to self-sufficiency (education, employment, financial management, emotional support). 42 U.S.C. § 677(a). At the federal level, the program is administered by the Administration for Children and Families ("ACF") within the Department of Health and Human Services ("HHS"). 42 U.S.C. § 677(b); 45 CFR § 1355.20(a). In Mississippi, MDCPS serves as the "Title IV-E agency"

6

responsible for administering the Title IV-E plan and funds, coordinating services, and certifying compliance with federal requirements. 42 U.S.C. § 677(b)(2); 45 CFR § 1355.20(a).

To receive Chafee funding, MDCPS must submit a five-year plan to the ACF certifying compliance with specific federal requirements found in 42 U.S.C. § 677(b)(3). Importantly, there is **no** prerequisite or funding conditions to receive Chafee funds in connection with developing or maintaining IEPs under the IDEA at issue. The receipt of Chafee funds is **not** contingent on compliance with IDEA laws or regulations. *See* 42 U.S.C. § 677(b); *see also* 45 CFR §§ 1355.21 (Title IV-E plan), 1355.30 (other applicable regulations). Rather, only the IDEA grant conditions payment on certifying IEPs are "developed, reviewed, and revised for each child with a disability in accordance with [20 U.S.C.] 1414(d)[.]" 20 U.S.C. § 1412(a)(4).

There is no statutory requirement under 42 U.S.C. § 677 for an IEP or a "parent" signature to access Chafee funds/services. Notably, Title IV-E and the Chafee grant defines a "parent" as "biological or adoptive parents or legal guardians, as determined by applicable State law." 42 U.S.C. § 675(2). Unlike the IDEA, the Chafee grant's definition of "parent" does not expressly exclude "the State if the child is a ward of the State." *Compare* 42 U.S.C. § 675(2) (Title IV-E/Chafee); *with* 20 U.S.C. § 1401(23) (IDEA), 34 C.F.R. § 300.30 (IDEA). There is likewise no "Surrogate Parent" requirement in the Chafee grant program. *See generally* 42 U.S.C. §§ 675, 677; *cf.* 20 U.S.C. § 1415(b)(2) (IDEA surrogate parent). Moreover, the Chafee statute prioritizes the autonomy of the youth rather than the "parent" or guardian. *See, e.g.*, 42 U.S.C. § 677(b)(3)(H).

To work around their problem, Plaintiffs pivot again and rely on a single NYTD data element (among 58 others) which MDCPS collects and reports to ACF under the Chafee grant. 45 CFR § 1356.80. NYTD requires MDCPS to collect and report (on semi-annual basis) 58 data points on demographics, services and outcomes of served youth. 45 CFR §§ 1356.81-1356.83.

Without authority, Plaintiffs claim noncompliance with IDEA regulations over IEPs yields "fraudulent" reporting of one NYTD data element, #19 "Special education":

> (19) Special education. The term "special education" means specifically designed instruction, at no cost to parents, to meet the unique needs of a child with a disability. Indicate whether the youth has received special education instruction during the reporting period with a "yes" or "no" as appropriate. If the youth is not in the served population this element must be left blank.
>
> . . . .
>
> | 19 | Special education | Yes. No. |
> |---|---|---|

45 CFR §§ 1356.83(g)(3)(19), 1356 App'x A. No mention of IEP or IDEA appears in this data element #19. No requirement of compliance with IDEA is included. No IDEA statute or regulation is adopted therein.

Moreover, NYTD compliance and "error-free" data is achieved where #19 "special education" and 50 other elements are 90% correct (*i.e.*, 46 of 51 data elements). Thus, data errors, inconsistent/missing data or blank responses are permissible for up to 5 data elements. 45 CFR § 1356.85(b)(1), (c)(1). Contrary to Plaintiffs' argument, a single erroneous data element does not, by itself, result in statutory noncompliance without four (4) other erroneous data elements. Plaintiffs have failed to identify any other alleged erroneous data elements besides 1 (2% of 51) for #19 special education.

Because compliance with the IDEA is not a "prerequisite" for receiving Chafee funds, Plaintiffs' complaints about IDEA compliance could not, as a matter of law, have been "in furtherance of" an FCA action related to the Chafee Grant. Their *post hoc* attempt to link these two separate programs is legally unavailable and, at best, a "vague and unsubstantiated" allegation that cannot survive summary judgment.

**B.     CHAFEE GRANT THEORY LACKS FACTUAL SUPPORT FOR A NEW PROTECTED ACTIVITY.**

Plaintiffs' ungrounded attempt at "protected activity" using the Chafee grant further lacks factual support. The "Chafee Grant" theory appears nowhere in Plaintiffs' documented internal complaints, and is absent from their communications and *First Amended Complaint*. Falgout admitted she did *not* know whether any issue with IEP "parent" would make IEPs invalid during the time in question. [30-1], 119:24-120:8. Young did not make the connection between the IEP regulations and the Chafee grant until *after* she was terminated. [30-2], pp. 145-146. The contemporaneous evidence—the email chain Plaintiffs rely on—is devoid of any reference to Chafee, NYTD, AFCARS, "false claims," or "fraud". [30-3]. Instead, they ask for legal "clarification" on "agency practice and policy" regarding the IDEA, which is "open for interpretation and speculation, including ours, which is why we need y'all's legal expertise." *Id.* An employer cannot be "on notice" of a fraud report that was never made.

Further, there are no documents or evidence which demonstrate the submission of any false or fraudulent NYTD data elements, or otherwise certified compliance with the Chafee grant for the payment of federal funds, during the applicable time frame. Young testified that she did not know whether anyone has certified compliance with the IDEA with the federal government. [30-2], 147:17-148:22.

Plaintiffs' testimony contradicts their self-serving Affidavits claiming, for the first time in response to summary judgment, that they raised concerns in-person about "fraudulent" NYTD data reporting under the Chafee grant. Young testified that the federal reporting she oversaw in the YTSS department, including how many kids had IEPs, were data points under the "MSA, the Modified Settlement Agreement for the Olivia Y. lawsuit". [30-2], pp. 47-49. Regarding the alleged February 8, 2021 meeting between Young, Falgout and Davenport, Young testified she expressed concerns for "the potential for disruption of services for children

and youth with IEPs without having the legal education decision-maker." [30-2], p. 61. Young clarified that the "potential for disruption of services" referred to MDCPS officials signing off as the parent in IEPs. *Id*. pp. 63-64. At the June 3, 2021, meeting, Young testified that her, Falgout and Davenport discussed the "same stuff," *i.e.*, "the potential for disruption of the services for the kids with IEPs" concerning MDCPS officials signing IEPs as the parent. *Id*. pp. 65-67.

Falgout testified that she was wholly responsible for supervising and implementing all aspects of the Chafee grant funding, including ensuring compliance with all Chafee grant requirements. [30-1], 38:18-39:15. Falgout testified her job duties also included responsibility over NYTD, including reporting the data to the federal government (ACF) and ensuring its compliance to receive Chafee grant funds. *Id*. 43:25-44:23. The NYTD data originates from the system MDCPS uses for data collection, the Mississippi Automated Child Welfare Information System ("MACWIS"). Falgout is also responsible for inputting/documenting this data. *Id*. 38:18-39:15, 45:13-47:11. All information contained in the NYTD data file is extracted from MACWIS, and Falgout was also responsible for documenting data in MACWIS. *Id*. 38:18-39:15, 47:1-47:11, 48:10-20. Falgout and her department oversaw NYTD data elements as required by the Chafee grant. *Id*. 49:13-50:24, 52:2-24.

Falgout testified that after the data was pulled from MACWIS for NYTD reporting, she would first review the data for accuracy and was responsible for submitting the NYTD report through the NYTD portal. NYTD then processed the submission for compliance. *Id*. 53:16-54:8. NYTD data element #19 "Special education" was extracted from MACWIS and was interpreted by Falgout to answer "yes" or "no" if a child had an IEP. *Id*. 55:19-56:1, 56:24-57:6. It was acknowledged, however, that the MACWIS data from which NYTD is derived is unreliable and often incorrect, including the data element for IEPs which the majority

answered "no." *Id*. 122:22-125:22. When the legal team requested the number of IEPs in place, to facilitate resolving the IEP issue in May 2020, Falgout and Young could not provide that information because it was inaccurate. *Id*. pp. 122-125.

However, Falgout specifically **denied** that any Chafee/NYTD data, including the "special education" element at issue, was ever **inaccurate** when submitted:

> Q. All right. I'm confused, because you said that, since 2010 or however, part of the data that had to be reported to NYTD included whether or not a kid has an IEP. Right?
> A. Correct.
> Q. And that's drawn from MACWIS which y'all have –
> A. Correct.
> Q. -- y'all ... have access to MACWIS. Right?
> A. Correct.
> . . . .
> Q. So during this whole time, from 2010 moving forward, was NYTD given the wrong data on that?
> A. No.

[30-1], 123:16-124:-9. On one hand, Plaintiffs' own **admission** directly contradicts and affirmatively dispels any "false claim" with IEP data elements for Chafee funds. On the other hand, no reasonable juror could conclude that Plaintiffs believed they engaged in a "protected activity" with blowing the whistle on themselves on fraudulent Chafee data elements they knowingly submitted to the government.

The complained practices covered by the IDEA are not prohibited by the Chafee grant, and thus not prohibited or protected by the FCA. The activity at issue is part of Plaintiffs' normal employment role regarding employment policies and practices, and both held roles to ensure compliance with law. Where, as here, inquiring about a policy is not the same as blowing the whistle on fraud.

### C.  DECISIONMAKER HAD NO KNOWLEDGE OF ANY PROTECTED ACTIVITY.

Plaintiffs' claims also fail on the essential elements of knowledge and causation. The relevant decisionmaker, namely Rushton, were unbiased and unaware of Plaintiffs' alleged

11

protected activity. Plaintiffs offer no evidence to rebut this or which shows Rushton had *actual* knowledge of the "protected activity." Falgout testified that she had "never been in a meeting with Shannon Rushton." [30-1], p. 165. Young testified that she "did not deal with [Shannon Rushton]." [30-2], p. 77. There is also insufficient proof that any other employees, such as the legal department, Kimberly Wheaton, Jason Hulitt, Marcus Davenport or Cynthia Moore-Hardy, had any influence over the decisionmakers over termination.

Plaintiffs' YTSS co-worker, Cynthia Moore-Hardy, filed a grievance for hostile work environment against Plaintiffs, and its investigation (with a 46-page investigation report) rolled into a subsequent investigation into allegations of time theft (with an 18-page investigation report). The investigation, in total, spanned from the last week of July 2021 through the middle of September 2021. Plaintiffs lack competent evidence, besides conclusory facts and conjecture, to support a chain of causation between any "protected activity" and termination. The suggestion that Moore-Hardy filed a hostile work environment claim in retaliation for Plaintiffs' IEP/IDEA reporting is pure speculation.

There is no evidence that MDCPS ever "raised dubious performance problems as a reason for their terminations," or knew of Plaintiffs' "protected activities" prior to negative performance reviews, as relevant to causation in retaliation cases. *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017). In fact, Falgout's overall performance review score had already dropped from 3.5 to 3.2 in September 2020, *i.e.*, well before any "protected activity" and a year before termination. [37-10], pp. 19-29. Young's overall performance review score was rated high at 3.6 for March 2021, who was reviewed by Davenport (first level reviewer) *after* Plaintiffs claim they reported the IDEA/IEP compliance issues to Davenport. Falgout testified that their collaboration efforts with MDE and the ABA continued past June through August 2021. [30-1], pp. 151-152, 172. Likewise, Falgout

12

admitted she continued work communications with Davenport through August, 2021. *Id.* pp. 153-156. According to Falgout, Davenport's alleged mistreatment or "interference" with Falgout was not retaliatory Rather, according to Falgout, it stemmed from a "personality" issue he had with her. *Id.* pp. 144-146.

### 3. AFFIDAVITS ARE NOT COMPETENT TO DEFEAT SUMMARY JUDGMENT.

Under Rule 56, cited materials in an affidavit must be "be presented in a form that would be admissible in evidence[,]" and "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(2), (c)(4). Thus, "statements in affidavits [must] be based on personal knowledge and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003). Further, "affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Cadena v. El Paso County*, 946 F.3d 717, 725 (5th Cir. 2020). Moreover, the Court cannot "consider hearsay evidence in affidavits and depositions." *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

The Affidavits of Falgout [37-1] and Young [37-2] are replete with the type of incompetent testimony that cannot defeat summary judgment. Numerous legal conclusions are present throughout regarding the Chafee federal grant program, compliance with the separate IDEA/IEP statutes, NYTD and AFCARS data reporting and compliance with IEPs, the legal ramifications of "parent" signatures on IEPs, the impact of youth from an "ongoing legal violation" and claimed "fraudulent" or "illegal" activity. Both Affidavits contain a countless vague, conclusory, self-serving allegations that lack personal knowledge and are not probative to create a genuine issue of material fact. Without substance or basis, Plaintiffs broadly describe meetings with MDCPS officials to discuss conclusion of law like "legal

violations", Chafee "concerns," "false IEP submissions under AFCARS and also the NYTD," or "not following … Chafee Grant requirements." FALGOUT AFF. ¶¶ 16, 26, 31; YOUNG AFF. ¶¶ 13, 23, 28.  Plaintiffs also surmise, based in part on hearsay from unidentified co-workers, that Davenport was interfering with their work and blocked the program from serving youth. FALGOUT AFF. ¶¶ 45-60; YOUNG AFF. ¶¶ 40-55.

Plaintiffs have also not demonstrated personal knowledge to speculate from their "knowledge" as to whether Jason Hulitt's position existed before he was hired, or what Cynthia Moore-Hardy's work schedule was in 2021, or her job responsibility in the position of Federal Reporter working under Davenport. FALGOUT AFF. ¶¶ 61, 65, 73; YOUNG AFF. ¶¶ 59-60.  Neither Plaintiff has held this position before, and neither explain exactly what an "IEP/IDEA report" is.  The Affidavits rely on multiple documents that are unattached and are inadmissible hearsay.  Plaintiffs rely heavily on a document entitled the "YTSS Education Plan" that is unattached, never produced in discovery, and rank hearsay. FALGOUT AFF. ¶¶ 27-32; YOUNG AFF. ¶¶ 24-28.[1]  An "unscored job performance review" was cited but not attached, and a 2025 Foster Care policy was also cited but not attached or produced in discovery and is irrelevant to the 2021 period at issue. FALGOUT AFF. ¶¶ 15, 44; YOUNG AFF. ¶¶ 12, 38. The majority of Plaintiffs affidavits are not the type of significant probative evidence required to defeat summary judgment.

---

[1] The YTSS Education Plan should also be stricken from consideration in ruling on summary judgment under Rule 37.  "A party is under a duty to supplement disclosures at appropriate intervals under FED. R. CIV. P. 26(e) and in no event later than the discovery deadline established by the case management order." L. U. CIV. R. 26(a)(5); *see* FED. R. CIV. P. 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).  Here, the failure to produce the YTSS Education Plan is not substantially justified or harmless.  The YTSS Education Plan was identified in Plaintiffs' *First Amended Complaint*.  Young confirmed that it was an actual document in her possession, agreed to produce it, but failed to do so.  [30-2], pp. 67-68.  Instead, Plaintiffs rely on the missing document's contents to respond to summary judgment without attaching the document itself to the Affidavits.

14

### 4. PLAINTIFFS CANNOT ESTABLISH PRETEXT.

Assuming, *arguendo*, Plaintiffs could establish a *prima facie* case, their claim still fails. Plaintiffs have not met their ultimate burden of persuasion to show that MDCPS intentionally retaliated against them. The record shows Plaintiffs were terminated for "falsification of time cards" and instructing subordinates to lie about meeting with them. [30-4], 9:7-16, 14:13-22. This legitimate, non-retaliatory reason has remained consistent since the date of termination on September 14, 2021. *See also* [30-1], p. 163; [30-2], pp. 74-75.

Plaintiffs' chief response is to *disagree* with the investigation's findings, claiming MDCPS failed to get their side of the story. However, MDCPS did try and get their side of the story; and concluded they orchestrated a cover-up. Other employees complicit in lying about stealing time and lying to MDCPS when confronted about it were similarly terminated.

Even if the investigation was wrong or mistaken, the "validity" or falsity of Plaintiffs' time fraud "is not the central issue[.]" *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993). The "real issue is whether the employer reasonably believed" in "good faith" that the employee engaged in misconduct and was discharged "based on that belief." *Id.* at 1065-66. Plaintiffs offer no evidence that Rushton did not, in good faith, believe they had committed time theft and instructed co-workers to lie on their behalf. Pretext is further refuted where, as here, Rushton did not know of any "protected activity." Indeed, Rushton hired Young and later recommended and approved her promotion to Division Director II. [30-2], pp. 77, 103-104; *see also* [30-3], p. 80. Even Davenport recommended Falgout for her promotion to Bureau Director II. [30-1], pp. 33-35.

### 5. STATE LAW CLAIMS FAIL.

Plaintiffs' state-law wrongful termination claim under *McArn v. Allied Bruce-Terminix Co., Inc.*, 262 So. 2d 603 (Miss. 1993), also fails. The summary judgment evidence demonstrates that Plaintiffs reported a regulatory issue regarding the IDEA's definition of

15

"parent". Reporting statutory noncompliance that could only potentially result in decreased funding is not reporting a criminal act. The *McArn* exception is narrow and does not apply.

Plaintiffs cannot meet the "tall order" standard of proof for Intentional Infliction of Emotional Distress. Plaintiffs allege the "systematic retaliation" and "fabrication of misconduct" meets this standard. Yet, investigating employees for time theft and terminating them as a result—even if they dispute the finding—is a standard employment action, not an "atrocious" and "utterly intolerable" act. Plaintiffs' IIED claim is based on an ordinary workplace dispute and must be dismissed.

## CONCLUSION

Accordingly, Defendant MDCPS is entitled to summary judgment on all claims.

RESPECTFULLY SUBMITTED, this the 24th day of November, 2025.

**MISSISSIPPI DEPARTMENT OF CHILD PROTECTION SERVICES**, *Defendant*

**LYNN FITCH, ATTORNEY GENERAL STATE OF MISSISSIPPI**

/s/ *Will Ivison*
WILLIAM C. IVISON
Special Assistant Attorney General
Mississippi Bar No. 104213

Will Ivison (MSB #104213)
Lindsay Thomas Dowdle (MSB #102873)
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi 39205-0220
Tel.:   (601) 359-4245
        (601) 359-3020
Fax:    (601) 359-2003
Email:  Will.Ivison@ago.ms.gov
        Lindsay.Dowdle@ago.ms.gov

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the ECF system which provided a copy to all counsel of record.

SO CERTIFIED, this the 24th day of November, 2025.

/s/ *Will Ivison*
WILLIAM C. IVISON (MSB #104213)
Special Assistant Attorney General